**PUNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

      **Plaintiff,**

**v.**                                 **Case No. 6:26-cv-1134-GAP-LHP**

**ASSETS IDENTIFIED IN**
**PARAGRAPH ONE OF**
**VERIFIED COMPLAINT**

      **Defendants.**

**ORDER GRANTING TIME-SENSITIVE UNOPPOSED**
**MOTION FOR INTERLOCUTORY SALE OF PROPERTY**

This matter comes before the Court on the Government's Unopposed Time-Sensitive Motion for Interlocutory Sale of Property.

**I. Background**

On May 21, 2026, the Government filed a Verified Complaint for Forfeiture *In Rem* ("Complaint"). Doc. 1. The Complaint arises from a parallel criminal complaint against Defendant Christopher Delgado ("Defendant") alleging that he "operated Goliath Venture, Inc. [("Goliath")] as a Ponzi scheme" and lists significant real property in addition to 11 vehicles.[1] *See id.* at 1-5, 7. These vehicles include a 2025 Lamborghini Revuelto, VIN: ZHWUC1ZM9SLA02300 (the "Revuelto"). *Id.* at 4; The vehicle was leased by Defendant from Fields Motorcars Orlando d/b/a

---

[1] "On June 22, 2026, [Defendant] signed a plea agreement in which he agreed to enter a guilty plea to the information charging him with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, one count of substantive wire fraud in violation of 18 U.S.C. § 1343, and one count of money laundering in violation of 18 U.S.C. § 1957." Doc. 37 at 2-3; *see United States v. Christopher Alexander Delgado*, No. 6:26-cr-00158-GAP-NWH, Doc. 52 (M.D. Fla. Jun. 23, 2026).

Lamborghini Orlando through Porsche Leasing Ltd. d/b/a Lamborghini Financial Services ("Porsche"). Defendant signed the contract for a 39-month lease on April 22, 2025. The price of the car was $719,517.01 and he put $125,000 down with payments of $7,527 per month. Defendant installed approximately $300,000 in aftermarket parts on the Revuelto, most notably a $222,000 carbon-fiber widebody kit.  Defendant paid approximately $193,733.01 towards the lease agreement. The payments towards the lease were made with the fraudulent proceeds of his alleged Ponzi scheme. Doc. 1 at 50-51. Defendant made payments towards the lease through February 2026. *Id.*

The Court issued a warrant for arrest *in rem* on May 22, 2026. Doc. 22. The Government reports that the Internal Revenue Service ("IRS") has been storing and maintaining the Revuelto since it was seized earlier this year. Storage costs—which have been paid through July 13, 2026—presently total $2,100. *Id.*

On July 10, 2026, the Government filed the instant motion, seeking to sell the Revuelto for $625,000 to the same Orlando car broker who purchased the Rolls Royce ("Dealership"). The lease payout to purchase the vehicle is approximately $604,438.87. In most cases, the United States returns leased vehicles to the owner. Porsche Leasing informed the IRS that the "target price" it would sell the Revuelto for if it was returned is $602,000. IRS inquired if the dealership that sold Delgado the Revuelto would submit an offer to buy it. The dealership declined.

Delgado has stopped making the $7,527 monthly lease payments in March 2026. The lease is in default, and interest continues to accrue and the Revuelto

depreciates in value. The Government estimates the sale to the Dealership will yield approximately $19,000 in net profit.

As part of his plea agreement, Defendant "agreed to consent to the forfeiture" of the assets in the instant forfeiture action, including the Revuelto. *see United States v. Christopher Alexander Delgado, No. 6:26-cr-00158-GAP-NWH, Doc. 52 at 23-24 (M.D. Fla. Jun. 23, 2026).* Additionally, Defendant already consented to forfeit the property in this case and his counsel has reaffirmed that he "has no objection to the interlocutory sale." Doc. 32 at 1; Doc. 33.

The Government requests a ruling by July 16, 2026, so that it may proceed with accepting the current purchase offer and prevent incurrence of further storage costs, which may lead to a net loss.

## II. Legal Standard

Supplemental Rule G of the Federal Rules of Civil Procedure governs forfeiture actions *in rem* arising from federal statutes. Fed. R. Civ. P., Supp. ("Supp. R.") G(1). Subsection 7 provides that courts may order the interlocutory sale of property if:

> (A) the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action;
> (B) the expense of keeping the property is excessive or is disproportionate to its fair market value;
> (C) the property is subject to a mortgage or to taxes on which the owner is in default; or
> (D) the court finds other good cause.
> Supp. R. G(7)(b)(i). Any interlocutory sale "is governed by 28 U.S.C. §§ 2001,

2002, and 2004, *unless* all parties, with the court's approval, agree to the sale, aspects of the sale, or different procedures." Supp. R. G(7)(b)(iii) (emphasis added).

### III. Analysis

The Eleventh Circuit has held that "[a] district court may require claimants in forfeiture proceedings to comply strictly with the [Supplemental Rules'] requirements in presenting claims to the court." *See U.S. v. $125,938.62*, 370 F.3d 1325, 1328-29 (11th Cir. 2004) (internal quotations and citation omitted) (analyzing Supplemental Rule C). In an unreported case, it has also recognized that "[i]n certain circumstances, Supplemental Rule G(7) permits the district court to authorize the sale of real property before the forfeiture case is resolved." *U.S. v. Real Prop. Located at 55 Pub. Square, Cleveland, Ohio*, No. 21-10696, 2022 WL 1549161, *2 (11th Cir. May 17, 2022) (unpublished). In such circumstances, the court "may use other procedures for the sale if all parties…agree to the sale, aspects of the sale, or different procedures." *Id.* (quoting Supp. Rule G(7)(b)(iii)). After the sale, the "[s]ale proceeds are a substitute *res* subject to forfeiture in place of the property that was sold." *Id.* (quoting Supp. Rule G(7)(b)(iv)).

The property subject to the instant motion—the Revuelto —was obtained using "proceeds of [Defendant's] wire fraud scheme, committed in violation of 18 U.S.C. § 1343, outlined in the complaint[,]" placing it within the purview of Supplemental Rule G. Doc. 37 at 2; *see supra* at note 1; Supp. R. G(1). "[G]iven the minimal amount of equity remaining in the [depreciating] Revuelto," the costs of storage, and the Parties' agreement, the Court finds that the Government's Motion easily satisfies each of Rule G(7)(b)(i)'s enumerated prerequisites for ordering an interlocutory sale.[2] Further, the Government has certified that "the IRS has the

---

[2] Because all parties agree to the sale, 28 U.S.C. §§ 2001, 2022, and 2004 are inapplicable. *See* Supp R. G(7)(b)(iii).

authority to conduct the sale and is prepared to do so[,]" thereby satisfying Rule

G(7)(b)(ii). *Id.* at 5. The Court likewise approves of the Parties' agreement to sell the

Revuelto to the Dealership in order to secure a profit on this property.

Therefore, "immediate interlocutory sale of the Revuelto" is appropriate in

these circumstances.

### IV. Conclusion

Accordingly, it is **ORDERED** that the Government's Unopposed Time-

Sensitive Motion for Interlocutory Sale of Property is hereby **GRANTED**.

The net sale proceeds **SHALL** be substitute *res* subject to forfeiture in place of

the Revuelto and **SHALL** be held in an interest-bearing account maintained by the

Government pending conclusion of the forfeiture action.

DONE and ORDERED in Chambers, Orlando, Florida on July 13th , 2026.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record